

WAYNE CHUNG, MD
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Tel: 415-350-0926
Fax: 707-864-6320
waynechung87@gmail.com

Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

E-filing

CV **09**          **26 15**

| WAYNE CHUNG, MD | ) Case No. |
|---|---|
| Plaintiff | ) |
| v. | ) **COMPLAINT FOR INJUNCTIVE AND** ) **DECLARATORY RELIEF AND FOR** ) **DAMAGES** |
| BARBARA JOHNSTON; JANE SIMON; LAWRENCE MERCER CRAIG STEWARD; CHARLES SEAMAN; MELVIN BROWN; VALERIE MOORE; HEDY CHANG; DOES 1-25 | ) **DEMAND FOR JURY TRIAL** ) ) ) |
| Defendants | |

## PRELIMINARY STATEMENT

1. Wayne Chung, MD ("Dr. Chung") at all times herein was a physician licensed by the Medical Board of California ("MBC"), holding Certificate No: A63888. Plaintiff received his license to practice medicine in California on November 14, 1997. Plaintiff, until the time of his emergency interim suspension on Feb. 5, 2008 by the MBC, practiced internal medicine and was board certified in this area. Plaintiff is a resident of San Francisco, California.

2. Medical Board of California is an agency of the State of California charged by law with administering and enforcing the Medical Practice Act, Government Code § 2000 *et seq.* Defendants are officials of the MBC and include: Barbara Johnston, Executive Director; Craig

Steward, Senior Investigator; Charles Seaman, MD, Psychiatric Consultant; Melvin Brown, MD, Psychiatric Consultant; Valerie Moore, Analyst; Hedy Chang, Panel A Member. Jane Simon and Lawrence Mercer are Deputy Attorney Generals in the California Department of Justice responsible for co-investigating and prosecuting violations of the Medical Practice Act for the MBC.

3.   In the fall of 2007, Plaintiff was successfully engaged in the practice of medicine as a board certified internist. He had, for several years, worked as a hospitalist in Northern and Southern California medical centers, all the while building a private practice for preventive health care in San Francisco's Embarcadero Center. While simultaneously balancing the growing private practice with his hospitalist work, Plaintiff was also in his final year of an Executive MBA program at Yale, in New Haven, Connecticut. As a hospitalist, Plaintiff practiced medicine with an acutely ill population in a highly visible position. Not once did any patient or peer complain about Plaintiff's provision of medical services. His record was completely unsullied, with no lawsuits, disciplinary complaints, or peer review action.

4.   Although no patient or peer has ever registered a complaint of any kind regarding Plaintiff, Defendants subjected him to investigation, forced psychiatric evaluation, emergency suspension of his medical license since Feb.. 5, 2008, and public discipline. This sequence of events was precipitated by Plaintiff having written complaint letters in 2005 and 2007 to the United States Department of Justice ("DOJ"). He asked for an investigation of suspected privacy violations and illegal surveillance conducted against him by either rogue hackers or law enforcement agents, based on circumstantial evidence.

5.   An employee of the U.S. Department of Justice, Ken Gibson, apparently thought otherwise, and purportedly sent an irregular fax to officials of the MBC alleging that Plaintiff was "mentally ill" in 2005. This false accusation of mental illness has continued to preoccupy the Defendants ever since. An intensive investigation of Plaintiff's practice lasting nearly 3 years has uncovered absolutely no patient harm or breach in the standard of care. Plaintiff has, however, been repeatedly forced to justify the legitimacy of his complaint letters.

6.   This civil complaint for damages presents an unprecedented situation in which a

highly qualified and healthy physician is still prevented from practicing medicine for having complained as a private U.S. citizen to a government agency. There is no statutory authority for what the Defendants have done to Plaintiff. There is no evidence to support any conclusion that Plaintiff poses a risk to the public. Plaintiff has suffered tremendous, irreversible damage to his professional reputation and financial situation, as he has been unable to earn a living since his emergency interim suspension order on Feb. 5, 2008, and is still prevented from doing so to this date by the Defendants.

7.    Deprivation of Plaintiff's right to practice was an "emergency" response out of all proportion to the circumstance of writing complaint letters to the United States DOJ, which is protected free speech. By issuing their emergency interim suspension order on Feb. 5, 2008, and final decision effective Sept. 11, 2008, the Defendants have continued depriving Plaintiff of his constitutionally protected free speech, due process and property rights, U.S. Const. Amend I, XIV.

8.    Now, nearly 16 months later, the deprivation continues; as the Defendants have in effect extended the emergency interim suspension indefinitely, by not allowing Plaintiff to return to practice until he is examined and cleared by a Board appointed psychiatrist, and monitored by 5 years of onerous probation requirements. The Defendants have refused to schedule the psychiatric evaluation exam since the final decision effective Sept. 11, 2008, in effect continuing to prevent Plaintiff from returning to earning a living from the practice of medicine.

9.    Plaintiff asserts "economic loss and personal injury" as a result of malicious infliction of emotional distress, violation of federal civil rights, violation of state constitutional rights and law, retaliation for exercising constitutional rights and violation of the right to pursue a livelihood by Defendants acting under the color of law, using fraud and perjury.

10.    By this complaint, Plaintiff seeks the following relief: (1) reinstate Plaintiff's medical license to full, unrestricted status, in good standing, as it existed before the proceedings; (2) a judicial declaration that Defendants' actions violated Plaintiff's constitutional rights; (3) a permanent injunction prohibiting Defendants from making any future false allegations of mental

3

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

1  illness against Plaintiff; (4) award Plaintiff compensatory, special, and punitive damages in an

2  exact amount according to proof, but totaling at least $15 million.

## JURISDICTION

11.     This case arises under the United States Constitution, under Title 42 of the United

States Code, § 1983 (civil rights action), under Title 28 of the United States Code §§ 2201 and

2202 (declaratory relief).

12.     This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil

rights). In the event some of the defendants turn out to be federal actors, than this Court has

jurisdiction pursuant to 28 U.S.C. § 1346, and this action is authorized and instituted pursuant to

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

This Court has supplemental jurisdiction over the state law claims alleged in this complaint

pursuant to 28 U.S.C. § 1367.

## INTRADISTRICT ASSIGNMENT AND VENUE

13.     Plaintiff is informed, believe and thereon allege that a substantial part of the events

giving rise to the claims herein alleged occurred in this district and that Defendants and/or

agents of Defendants may be found in this district and that venue is proper in this judicial

district pursuant to 28 U.S.C. § 1391.

14.     Intra-district Assignment: Assignment to the San Francisco division is proper

pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events and omissions

giving rise to this lawsuit occurred in this district and division.

## PARTIES

15.     Plaintiff, Wayne Chung, MD ("Dr. Chung") at all times herein was a physician

licensed by the Medical Board of California, holding Certificate No: A63888. Plaintiff received

his license to practice medicine in California on November 14, 1997. Plaintiff, until the time of

4

1  his emergency interim suspension on Feb. 5, 2008, practiced internal medicine and was board
2  certified in this area. Plaintiff is a resident of San Francisco, California.

3      16.    Defendant Barbara Johnson is Executive Director of the MBC. She participated in
4  the execution of the initial Oct. 23, 2007 Petition to Compel Psychiatric Exam, which was not
5  served to Plaintiff until Feb. 29, 2008, *after* he had already been emergently suspended. At all
6  relevant times, Defendant Johnson acted under the color of law and in the course and scope of
7  her duties with the MBC. She is sued in her individual and official capacities.

8      17.    Defendant Craig Steward is a senior investigator with the MBC. He participated
9  in the nearly 3 year unofficial investigation of Plaintiff by secretly receiving and using as the
10 sole basis for disciplinary action, Plaintiff's confidential, privileged DOJ complaint letters from
11 Ken Gibson (U.S. DOJ) in 2005 and 2007 without Plaintiff's prior knowledge or permission. At
12 all relevant times, Defendant Steward acted under the color of law and in the course and scope
13 of his duties with the California DOJ and MBC. He is sued in his individual and official
14 capacities.

15     18.    Defendant Jane Simon is a Deputy Attorney General with the California
16 Department of Justice responsible for co-investigating and prosecuting violations of the Medical
17 Practice Act. Under the Vertical Enforcement Act, she acted alongside Defendant Steward in a
18 co-investigative capacity.  Defendant Steward's investigation report contained the factual
19 evidence relied upon by Defendant Simon in deciding to take disciplinary action and initiate
20 emergency suspension proceedings. Significantly, this report was not signed by Defendant
21 Simon. At all relevant times, Defendant Simon acted under the color of law and in the course
22 and scope of her co-investigative duties with the California DOJ and MBC. She is sued in her
23 individual and official capacities.

24     19.    Defendant Lawrence Mercer is a Deputy Attorney General with the California
25 Department of Justice responsible for co-investigating and prosecuting violations of the Medical
26 Practice Act. Under the Vertical Enforcement Act, he acted alongside Defendant Steward in a
27 co-investigative capacity. Defendant Mercer falsely alleged in the Accusation that Plaintiff had
28 committed unprofessional conduct and violated the Medical Practice Act.  There was no

1  evidence for that assertion. The only "evidence" was Plaintiff's confidential, privileged
2  complaint letters to the U.S. DOJ. At all relevant times, Defendant Mercer acted under the color
3  of law and in the course and scope of his co-investigative duties with California DOJ and MBC.
4  He is sued in his individual and official capacities.

5       20.    Defendant Melvin Brown, MD is a private psychiatrist contracted by the MBC as
6  a consultant. Defendant Brown read in 2006 and 2007, Plaintiff's privileged DOJ complaint
7  letters and submitted a maliciously false declaration in support of the Oct. 23, 2007 Evaluation
8  Petition, despite never examining, treating or meeting with Plaintiff. At all relevant times,
9  Defendant Brown acted under the color of law and in the course and scope of his duties with the
10 MBC. He is sued in his individual and official capacities.

11      21.    Defendant Charles Seaman, MD is a private psychiatrist contracted by the MBC as
12 a consultant. On November 23, 2007, he conducted a psychiatric exam of Plaintiff. On
13 December 10, 2007, Defendant Seaman issued his Report to the Medical Board, which opined
14 that Plaintiff was unable to practice medicine safely, based on falsified and fraudulent
15 supporting documents. Defendant Seaman misled the Administrative Law Judges ("ALJs") that
16 Plaintiff had already been compelled to see another Board appointed psychiatrist over half a year
17 earlier on May 31, 2007, a material misrepresentation which surely biased their opinions, and
18 negatively prejudiced their conclusions and decisions. At all relevant times, Defendant Seaman
19 acted under the color of law and in the course and scope of his duties with the MBC. He is sued
20 in his individual and official capacities.

21      22.    Defendant Valerie Moore is an analyst with the MBC. She participated in the
22 execution of the Oct. 31, 2007 Compelling Order For Psych. Exam, despite the Oct. 23, 2007
23 Petition not having been issued to Plaintiff prior, a right accorded to other physicians. She
24 prepared falsified and fraudulent documents submitted as evidence at the hearings. At all
25 relevant times, Defendant Moore acted under the color of law and in the course and scope of her
26 duties with MBC. She is sued in her individual and official capacities.

27      23.    Defendant Hedy Chang is member of Medical Board Panel A. She participated in
28 the execution of the Decision After Non-Adoption effective Sept. 11, 2008. This Decision,

1   signed by Defendant Chang, significantly and without justification, omitted ALJ Owyang's
2   conclusion that Plaintiff did not currently present a danger to his patients. At all relevant times,
3   Defendant Chang acted under the color of law and in the course and scope of her duties with
4   MBC. She is sued in her individual and official capacities.

5   24.   Plaintiff is ignorant of the true names and capacities of Defendant DOES 1-25
6   inclusive and therefore sues these Defendants by such fictitious names. Plaintiff is informed and
7   believe and thereon allege that each Defendant so named is responsible in some manner for the
8   injuries and damages sustained by Plaintiff as set forth herein. Plaintiff will amend his complaint
9   to state the names and capacities of DOES 1-25 when they have been ascertained.

10   25.   Plaintiff is informed and believe and thereon allege that each of the Defendants
11   caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries alleged
12   in this complaint, by, among other things, personally participating in said conduct and/or acting
13   jointly with others who did so and/or by authorizing, acquiescing or setting in motion policies,
14   plans or actions that led to the unlawful conduct taken by employees under his or her direction
15   and control.

16   26.   On June 3, 2009 Plaintiff filed an administrative claim against Defendants
17   pursuant to Cal. Gov. Code § 910 *et seq.*

18

19   ## FACTUAL ALLEGATIONS RELATED TO ALL COUNTS

20   27.   Defendant Seaman, Medical Board psychiatric consultant, fabricated false
21   evidence in his report and committed subsequent perjury on March 17, 2008 in the
22   administrative disciplinary proceeding against Plaintiff (Case No: 03-2005-167920, OAH No:
23   2008020633). Defendant Seaman violated Plaintiff's Constitutional right to free speech by
24   maliciously labeling him with a false mental diagnosis in order to silence his 2005 and 2007
25   complaint to the United States DOJ in violation of 18 U.S.C. 241which states:

26   "If two or more persons conspire to injure, oppress, threaten, or intimidate
     any person in any State, Territory, Commonwealth, Possession, or District
27   in the free exercise or enjoyment of any right or privilege secured to him
     by the Constitution or laws of the United States... They shall be fined
28   under this title or imprisoned not more than ten years"

7

1

2      28.    Defendant Seaman showed dishonest and malicious intentions as a Medical Board

3   psychiatric consultant. Despite the Oct. 31, 2007 Order Compelling Psychiatric Exam requiring

4   "The results of said examination shall be reported by the examiner(s) in a detailed written report

5   ...which shall be delivered to the Executive Director of the Medical Board, *with a said copy to*

6   *Wayne Chung, MD*," (Book 8, 17: ¶4.)[1] Defendant Seaman willfully did not provide Plaintiff a

7   copy as required.

8      29.    Defendant Seaman referred to a falsified May 31, 2007 Compelling Order for

9   Psychiatric Exam which was never served to Plaintiff, yet referred to in his own report on Dec.

10   10, 2007 (Book 1, 93:item 6.). The chronological sequence of source documents in that report

11   shows it was not a random mistake or typo, but was intentionally put in that order by Defendant

12   Seaman to willfully mislead others as to its existence. In fact, he falsely testified at the full

13   hearing on March 17, 2008 as to the Order's existence, "Well I gleamed that there existed this

14   order." (Book 4, 73:12-16.)   In knowingly making such false statements, Defendant Seaman

15   was in violation of Cal. Penal Code § 118, which states:

16         "Every person who, having taken an oath that he or she will testify,
        declare, depose, or certify truly before any competent tribunal, officer, or
17         person, in any of the cases in which the oath may by law of the State of
        California be administered, willfully and contrary to the oath, states as true
18         any material matter which he or she knows to be false... is guilty of
        perjury".
19

20      30.    In effect, Defendant Seaman misled the ALJs and other Defendants that Plaintiff

21   had already been compelled to see another Board appointed psychiatrist over half a year earlier,

22   a material misrepresentation which surely biased their opinions of Plaintiff's case, and

23

24

25   [1] Books 1-7 were originally submitted as exhibits for the San Francisco Superior Court in the Nov. 13,
26   2008 writ proceeding. Books 1-8 were submitted as exhibits with the California Court of Appeals on
    Jan. 15, 2009.

27

28

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

1 | negatively prejudiced their conclusions and decisions. In making such false statements based on
2 | fraudulent documents, Defendant Seaman was in violation of Cal. Penal Code § 132, which
3 | states:

> "Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or antedated, is guilty of felony."

31. Defendant Melvin Brown, Medical Board psychiatric consultant, never examined, treated or met with Plaintiff, yet submitted a false and malicious declaration in support of the Oct. 23, 2007 Petition Compelling Psych. Exam (Book 2, 26-29). Defendant Brown used Plaintiff's confidential, privileged U.S. DOJ complaint letters to maliciously render a false mental diagnosis in order to silence Plaintiff's complaint, in violation of 18 U.S.C. 242 which states:

> "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States... shall be fined under this title or imprisoned not more than one year, or both"

32. In doing so, Defendant Brown was in violation of the Cal. Civil Code § 47(b), the "official proceeding" privilege, which has been interpreted broadly to protect communication to or from governmental officials, which may precede the initiation of formal proceedings. Numerous cases agree that the section 47(b) privilege applies to complaints to governmental agencies requesting that the agency investigate or remedy wrongdoing. *Passman v. Torkan* (1995) 34 Cal.App.4th 607, 616-619 [privilege applied to a letter written to the local district attorney's office intended to prompt a criminal prosecution.]

33. Defendant Craig Steward, Medical Board investigator, gave Plaintiff's confidential, privileged U.S. DOJ complaint letters to Defendant Seaman in 2007 and Defendant Brown in 2006, 2007 for the purposes of maliciously labeling Plaintiff with a false mental

1  condition in order to silence his governmental complaint, in violation of 18 U.S.C. 241,242. In
2  doing so, Defendant Stewart was in violation of the Cal. Civil Code § 47(b). This absolute
3  privilege covers communications made before the official proceeding (such as a lawsuit or a
4  government investigation) actually begins. (*Martin v. Kearney* (1975) 50 Cal.App.3d 309, 311
5  [124 Cal.Rptr. 281].)

6  34.    There were 5 concealed faxes (pp.1,2,9,10,11) out of 11 total faxed by Ken Gibson
7  of the U.S. DOJ to Defendant Steward on Sept. 5, 2007, that were not provided to the ALJs. In
8  concealing such material evidence, Defendant Steward was in violation of Cal. Penal Code §
9  135, which states:

> "Every person who, knowing that any book, paper, record, instrument in
> writing, or other matter or thing, is about to be produced in evidence upon
> any trial, inquiry, or investigation whatever, authorized by law, willfully
> destroys or conceals the same, with intent thereby to prevent it from being
> produced, is guilty of a misdemeanor."

14  35.    Defendant Steward falsely declared in his Jan. 2, 2008 affidavit that it was only
15  after receiving Plaintiff's DOJ complaint letters in 2007 that "I learned that Dr. Chung had been
16  engaged in medical practice at several locations." (Book 2, 118). Later Defendant Steward
17  impeached himself by testifying at the full hearing on March 20, 2008 that he knew I had been
18  engaged in medical practice in 2006 stating, "I recall very fleetingly that he was working at
19  some hospital in Southern California on a part time basis." (Book 5, 32:16-20.) In knowingly
20  making such false statements, Defendant Stewart was in violation of Cal. Penal Code § 118.

21  36.    Defendant Steward later admitted he humored Plaintiff in initially agreeing to
22  investigate the 2005 DOJ complaint letter (Book 1, 6:26–27; 31:15–17; 121:12–15) but then
23  failed to do anything. (Book 1, 121:16-18.) Such unethical conduct shows clear bias and
24  prejudice against Plaintiff. In late October 2006, Defendant Steward requested an interview
25  with Plaintiff. (Book 1, 121:18-20.) Defendant Steward repeated his earlier threat that Plaintiff
26  recant his 2005 DOJ complaint letter or face disciplinary action by Defendant Simon. Plaintiff
27  agreed to be interviewed on January 10, 2007. Inexplicably, Defendant Steward failed to appear
28  at this interview. (Book 1, 121:20-24.)

37.     Defendant Steward's reckless, arbitrary behavior and repeated threats of discipline if Plaintiff did not recant his 2005 DOJ complaint letter, constituted interference with Plaintiff's constitutional right to free speech, and was in violation of Cal. Civil Code § 52.1, which states:

> "If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured."

38.     Defendant Valerie Moore, Medical Board analyst, filed the Oct. 23, 2007 Petition for Order Compelling Psych Exam, but knowingly did not put a copy in the envelope to Plaintiff. Nevertheless, she referred to it in her Oct. 31, 2007 letter falsely stating "as you receive this notice of the Petition." (Book 2, 49). Despite her certifying that the "attached documents are true copies of documents in the possession of the Medical Board of California..." (Book 3, 1) Defendant Moore was involved in questionable falsification and alteration of documents submitted as evidence during the Medical Board proceedings, in violation of 18 U.S.C. 241,242.

39.     There are serious doubts regarding the legitimacy of Ken Gibson's (U.S. DOJ) irregular faxes he purportedly sent to the Defendants on July 7, 2005 and July 13, 2005 to initiate the proceedings against Plaintiff. (Book 2, 9;16). The faxes are from the Special Litigation section, *not* Ken Gibson's Criminal Section. The DOJ insignia is cut off at the top third. The date/time appears on top of this partial insignia. There is no DOJ abbreviation next to the date/time as was the case with the 2007 faxes. (Book 1, 23-28).

40.     Ken Gibson's irregular July 7, 2005 DOJ fax appeared to have been altered when submitted to ALJ Owyang at the full hearing as it does not have the time and date on the top (Book 3, 53), as did the original version in Defendant Steward's investigative report released on Feb. 29, 2008. (Book 2, 9). Ken Gibson's Sept. 5, 2007 DOJ faxes appeared to have been altered when they were submitted to ALJ Owyang (Book 3, 62-67), as they did not have the

H
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

DOJ insignia and time/date on the top, as did the original version in the Jan. 3, 2008 Petition for Interim Order of Suspension Hearing. (Book 1, 23-28). In questionably preparing, altering and submitting such fraudulent documents, Defendant Moore was in violation of Cal. Penal Code § 134, which states:

> "Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."

41.     Defendant Jane Zack Simon, Deputy Attorney General, was without a shred of evidence that Plaintiff was impaired in his ability to practice medicine safely, and had no complaints regarding any patient safety issues, unprofessional conduct, or violation of the Medical Practice Act. Defendant Simon had no legal authority to proceed forward at this stage based solely on Defendant Brown's false and malicious declaration, and force Plaintiff, a healthy, competent licensee, to see Defendant Seaman. In doing so, Defendant Simon was attempting to coordinate an action by the Defendants to falsely label Plaintiff with an alleged mental disorder in order to silence his complaint to the government regarding suspected illegal privacy violations and surveillance, in violation of 18 U.S.C. §§ 241, 242.

42.     Defendant Steward's investigation report contained the factual evidence relied upon by the Defendant Simon in deciding to take disciplinary action and initiate emergency suspension proceedings. (Book 2, 2-7). Defendant Seaman relied upon this report in preparing his own evaluation. (Book 2, 98: item 2). Significantly, this report was not signed or approved by Defendant Simon (Book 2, 7), but she nevertheless issued the petition for emergency suspension order. Defendant Simon concealed Defendant Steward's investigation report from ALJ Crowell and ALJ Owyang by not submitting it into evidence in Plaintiff's emergency suspension hearing on Jan. 28, 2008 and full hearing on March 17, 20 and April 2, 2008.

43.     Defendant Simon made false statements to Superior Court Judge Peter Busch that Defendants did not know the whereabouts of Plaintiff's employment as a reason for the subpoena request to interview Plaintiff, when in fact Defendants had already notified two

1 | hospitals of Plaintiff's Feb. 5, 2008 emergency suspension. (*Barbara Johnston v. Wayne*
2 | *Chung, MD*, San Francisco Superior Court case no. CPF-08-508103).

3 |     44.    Defendant Lawrence Mercer, Deputy Attorney General repeatedly misled the
4 | ALJs with numerous false statements. In the Feb. 10, 2008 Accusation, he falsely stated, "The
5 | Justice department provided the Medical Board with a 2.5 page, single spaced letter dated June
6 | 22, 2005, written and *signed* by Dr. Chung." The Defendants submitted into evidence only an
7 | *unsigned* complaint letter. The four original signed complaint letters were all returned unopened
8 | by U.S. Postal Service, addressee unknown. This suggests a possible privacy violation of
9 | Plaintiff's communications as he alleged in the DOJ complaint letter. Defendant Mercer falsely
10 | stated in the Accusation that Plaintiff had committed professional misconduct by violating the
11 | Medical Practice Act. There was no evidence presented for any professional misconduct, other
12 | than Plaintiff writing complaint letters to the U.S. DOJ, a protected free speech act by the First
13 | Amendment of the United States Constitution. (Book 8, 41:27-28.)

14 |     45.    Defendant Mercer later admitted that the falsified May 31, 2007 Compelling Order
15 | for Psychiatric Exam never existed stating, "as shown by the administrative record, no such
16 | documents exists". (Book 8, 177:8-9.) Yet Defendant Mercer had already misled ALJ Crowell
17 | by falsely referring to this document at the Jan. 28, 2008 emergency suspension hearing stating
18 | "in *mid-2007* Petitioner declined to be examined, we followed the regular procedure for a
19 | petition and an order compelling psychiatric evaluation." (Book 1, 212:16-18).

20 |     46.    Defendant Mercer also misled Superior Court Judge Busch on June 6, 2008 by
21 | falsely stating that Plaintiff had voluntarily given up his medical practice. (*Wayne Chung vs.*
22 | *Medical Board of California*, San Francisco Superior Court case no. CPF-08-508367). Plaintiff
23 | was forced to stop practicing medicine by the Defendants issuing its emergency suspension
24 | order on Feb. 5, 2008. Defendant Mercer also falsely stated that Plaintiff voluntarily gave up his
25 | right to live testimony in ALJ Crowell's Jan. 28, 2008 suspension hearing. In fact, Plaintiff
26 | sought to have live expert testimony, but ALJ Crowell did not allow it at the hearing.

27 |     47.    Both Defendant Simon and Defendant Mercer repeatedly suppressed exculpatory
28 | evidence despite numerous requests by the Plaintiff, in clear violation of the Due Process clause

of the Fourteenth Amendment, *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This suppression of exculpatory evidence and pattern of numerous false statements before the ALJs was in violation of Cal. Civil Code Sec. 52.3(a) which states

> "No governmental authority, or agent of a governmental authority, or a person acting on behalf of a governmental authority, shall engage in a pattern or practice of conduct by law enforcement officers that deprive any person of rights, privileges, or immunities secured or protected by the Constitution or laws of the United Sates or by the Constitution or laws of California."

48. Defendant Hedy Chang, Medical Board Panel A member, signed the Decision After Non-Adoption effective Sept. 11, 2008. Defendant Chang's Decision intentionally omitted reference to Dr. Dalgoff's March 10, 2008 declaration where his conclusion was unequivocally that Plaintiff has *no current disorder*. (Book 3, 172.) Instead, Defendant Chang's Decision referred to a non-existent Jan. 26, 2008 exam by Dr. Dolgoff, which stated the disorder could not be ruled out. (Book 8, 98: ¶35.) The Decision repeated the findings and conclusions of ALJ Owyang, but significantly and without justification *omitted the conclusion that Plaintiff did not currently present a danger to his patients.* (Book 8, 102: ¶2.) This conclusion was explicitly stated in ALJ Owyang's Proposed Decision, but was intentionally edited out by Defendant Chang.

49. By way of current psychological testing, it was established that Plaintiff's mental state is normal in every respect. His mental status exam results were normal. (Book 5, 66:18-23). The results of the Shipley Institute of Living Scale were inconsistent with an active mental disorder. (Book 5, 68:24-69:5). His Beck Depression Inventory score was normal. (Book 5, 69:15-19). In regard to the most sophisticated and commonly relied upon test of mental disorder, the MMPI, psychologist Mark Zaslav, PhD testified "there's virtually no way in my professional opinion that a person with an active mental illness could answer the MMPI this way." (Book 5, 82:7-9).

50. Defendant Chang's Decision purports to vacate the emergency suspension order, but provides for continuing prohibition of practice of medicine by Plaintiff pending vaguely

defined and arbitrary conditions of further psychiatric evaluation and 5 years of onerous probationary conditions. (Book 8, 106: ¶2.) This condition is unwarranted given that Plaintiff was deemed safe to practice without any further psychiatric evaluation by ALJ Owyang after the full hearing on March 17, 20 and April 2, 2008. (Book 8, 59: ¶2.) Defendant Chang's Decision inflicts severe constitutional injury on Plaintiff in the form of discipline for his exercise of free speech in writing complaint letters to the DOJ, resulting in an emergency suspension since Feb. 5, 2008 using fraud and perjury; thereby depriving him of his constitutionally protected due process and property right to earn a living, U.S. Constitution Amendment XIV.

## Defendants Refusal to Consider Exculpatory Evidence Favorable to The Plaintiff

51.    On March 4, April 10 and May 11, 2009, Plaintiff submitted a written request to Defendant Johnston pursuant to the Cal. Public Records Act, Cal. Gov. Code § 6250 et seq., and Information Practice Act of 1977, Cal. Civil Code § 1798 et sq., to have personal information released from the Panel A meeting on July 24, 2008 (Case No: 03-2005-167920, OAH No: 2008020633), with a roll call of members who voted in negative against Plaintiff. Plaintiff also requested a copy of all DOJ faxes received by Defendants on July 7 & 13, 2005, and received by Defendant Steward on Sept. 5, 2007 from Ken Gibson of the United States DOJ, Civil Rights Division.

52.    Defendant Johnston has not provided a copy of all DOJ faxes received by Defendant Steward from Ken Gibson of the United States DOJ, Civil Rights Division on Sept. 5, 2007. Six pages of faxes were presented at the hearing as evidence, but page 2 is still not provided.    The July 7, 2005 DOJ faxes which were recently released to Plaintiff are missing pages 5 & 6.    By denying access to concealed faxes during the disciplinary proceedings, the Defendants withheld exculpatory evidence in Plaintiff's case and misled ALJ Crowell and ALJ Owyang, negatively biasing their opinion of Plaintiff's case.

53.    Defendant Johnston has provided incomplete records in violation of the Information Practice Act of 1977, Cal. Civil Code § 1798 et sq.    No roll call of members who voted in the affirmative or negative at the May 12, May 29 or July 24, 2008 meetings was

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

released. Bus. & Prof. Code § 2335 (c)(2) requires 2 votes against Plaintiff to defer the final decision pending discussion, and Bus. & Prof. Code § 2335 (c)(5) requires a vote of the majority of the panel present to non-adopt the ALJ's decision and increase the penalty. Without proof (i.e.. names and signatures of members) provided by Defendant Johnston, that on May 12, 2008, 2 members voted against Plaintiff, and on May 29 and July 24, 2008, a majority of members present voted against Plaintiff, Defendant Chang's Decision is invalid; therefore, the discipline (i.e. probation) should be dismissed immediately, and Plaintiff's medical license re-instated to full, unrestricted status, in good standing, as it existed prior to the disciplinary proceedings.

54. On March 4, 2009 and April 10, 2009, Plaintiff submitted a written request to Richard Fantozzi, MBC President and Defendant Johnston respectively, asking for reconsideration of Defendant Chang's decision in light of the newly discovered evidence, and an investigation into official misconduct by these four officials of the Medical Board: Defendant Seaman, Defendant Brown, Defendant Moore and Defendant Chang, regarding the previously mentioned incidences of falsifications, alterations or concealment of evidence in the case. There has been no response by either Richard Fantozzi or Defendant Johnston to date regarding the request.

55. On March 4 & 16 and April 29, 2009, Plaintiff submitted a written request to Edmund Brown Jr., Attorney General, asking for an investigation of official misconduct by these four above-named officials of the Medical Board and three officials of the California DOJ, Defendant Simon, Defendant Mercer and Defendant Steward regarding the previously mentioned incidences of falsifications, alterations or concealment of evidence in the case. To date, there has been no response by the Attorney General's office regarding this matter

## Defendants Have Inflicted Severe, Irreversible Damage to Plaintiff

56. On Feb. 7, 2008, Feb. 22, 2008, Aug. 15, 2008 and Dec. 23, 2008, Defendants submitted written notice to Plaintiff that the emergency suspension, accusation, probation and practice limits would be made available to the public on their website. Defendants put forth in

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

their April 2009 quarterly newsletter, available to all physicians and the public, Plaintiff's discipline, including the false allegation that he "has a condition affecting his ability to practice medicine safely" and that he is "prohibited from practicing medicine until found fit to practice safely..." In addition, this discipline has been reported to national healthcare databanks, for anyone to obtain; and detailed legal documents describing this false allegation of mental illness, have been made readily available to the public for a nominal fee.

57.     The decision by Defendant Simon and Defendant Mercer to seek emergency suspension of Plaintiff's medical license on Feb. 5, 2008 was never truly about public safety. Rather it was a strategic decision designed to cut Plaintiff of from his source of income so that over time, he does not have the resources to defend himself through legal counsel and the judicial system. Defendants willfully and intentionally attempted to silence Plaintiff's DOJ complaints for redress of grievances, in direct violation of his First Amendment rights. This explains why over 16 months later, Defendants still have refused to schedule a psychiatric evaluation for the Plaintiff to pass, so that he may once again earn his living from the practice of medicine.     Defendants' reckless, malicious actions are in direct violation of Plaintiff's constitutionally protected due process and property rights, U.S. Constitution Amendment XIV.

58.     Plaintiff has been suspended or terminated from the 5 private insurance panels he contracted with in his Embarcadero Medical Group, Inc. preventive health practice: Blue Shield, Blue Cross, United Healthcare, Cigna, Aetna. Plaintiff's hospital privileges at the 2 private hospitals he was doing independent contract work as a hospitalist have been suspended or terminated: Doctors Medical Center, Hoag Presbyterian Memorial Hospital. Plaintiff's medical malpractice carrier, The Doctor's Company, has suspended and withdrawn coverage. Plaintiff's Board Certification has been suspended and terminated by the American Board of Internal Medicine. All these damaging actions are the direct result of Defendants notifying them of Plaintiff's emergency suspension of his medical license on Feb. 5, 2008 due to a false accusation of mental illness using fraud and perjury.

59.     Since the emergency suspension of his medical license imposed on Feb. 5, 2008, Plaintiff has suffered tremendous damage to his professional and personal reputation, as this

false allegation of mental illness has been made public. This public disclosure of an allegation of false mental illness, forced psychiatric evaluation and subsequent public disciplinary action using fraud and perjury by the Defendants was willful and intentional and designed to mislead the public, causing tremendous, irreversible damage to Plaintiff's professional and personal reputation.

60.     Defamation of Plaintiff's professional and personal reputation has occurred during this period as Defendants' false allegation of mental illness exposes Plaintiff to hatred, contempt, ridicule or obloquy, causing him great harm in his occupation and business affairs. Such false allegations directly injures Plaintiff with respect to his profession by imputing to him, general disqualification in those respects which the occupation peculiarly requires, by imputing to him a loathsome disease, namely mental illness, which he does not have.

61.     Plaintiff was deprived of a fair proceeding guaranteed by the due process clause contained in the United States and California Constitutions. Defendant Steward never carried out his obligation to truly investigate the circumstances underlying Plaintiff's complaint letters and simply assumed that all of the allegations were untrue. To be consistent with equal protection, persons similarly situated with respect to the legitimate purpose of a law are entitled to receive like treatment. Plaintiff, a healthy licensee, by not being shown reasonable cause for a compelled psychiatric exam and subsequent disciplinary proceedings, was not given the same fairness, and justice in this procedure as other providers had been prior; and therefore was discriminated against and denied equal protection of the laws by Defendants in violation of his constitutionally protected due process rights, U.S. Constitution Amendment XIV.

## Defendants Do Not Have Absolute, Limited Or Qualified Immunity

62.     Plaintiff was deprived of his constitutional right to free speech and a fair proceeding guaranteed by the due process clause contained in the United States and California Constitution. 42 U.S.C. Section 1983, provided in pertinent part:

> " Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the

18

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

63. Such was the case with Defendants Chang's disciplinary actions against Plaintiff, whose constitutional rights are protected from governmental violation under these California state and U.S. federal laws, and which give him the right to seek redress under Cal. Civil Code Sec. 52.1, 52.3 and 42 U.S.C. Section 1983. The purpose of Section 1983, according to the United States Supreme Court was to "interpose the federal courts between the states and the people, as guardians of the people's federal rights-to protect the people from unconstitutional action under color of state law, "whether that action be executive, legislative, or judicial." (*Mitchum v. Foster* (1972) 407 U.S. 225, 242.)

64. Drawing on Supreme Court precedent, see, e.g., *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001), courts have developed a three-part algorithm for assessing whether a federal or state actor is entitled to qualified immunity. (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right. If all three have been met, qualified immunity cannot be claimed by any of the Defendants.

65. Courts have held that qualified immunity would be defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury. The recognized "subjective" aspect of qualified or "good faith" immunity - is not available if the official asserting the defense "took the action with the malicious intention to cause a deprivation of constitutional rights or other injury," (*Wood v. Strickland* (1975) 420 U.S. 308, 322). Defendants' actions were clearly willful, intentional and malicious violations of Plaintiff's constitutional rights in order to silence his DOJ complaints.

66. In addition, although prosecutors are entitled to immunity for activities that are "intimately associated with the judicial phase of the criminal process," a prosecutor engaged in investigative or administrative activities is only entitled to a good faith defense. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). See also, *Kalina v. Fletcher*, 522 U.S. 118 (1997). Defendant Simon and Defendant Mercer had significant co-investigative roles in accordance with the MBC's own Vertical Enforcement Act guidelines, thus do not have absolute immunity.

67. In *Mooney v. Holohan*, 294 U.S. 103 (1935) (per curiam), the Supreme Court explained that due process is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty, through a deliberate deception of court and jury by the presentation of testimony known to be perjured.

68. If any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. See, e.g., *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc). Actions taken in contravention of this prohibition necessarily violate due process (what does due process entail if not protection against deliberate framing under color of official sanction?)

69. Plaintiff is suffering and will continue to suffer irreparable injury by the malicious and unlawful retaliation against his exertion of free speech rights by Defendants in disciplining him under the pretenses of a false mental diagnosis in order to silence his complaint to the government. Plaintiff has no legal remedy to adequately address all the injuries to him as a result of Defendants' acts set forth above.

## COUNT I

### THE FIRST AMENDMENT OF THE U. S. CONSTITUTION
### (AGAINST ALL DEFENDANTS)

70. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-69 above, as though fully set forth.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

71 Plaintiff wrote complaint letters in 2005 and 2007 to the United States DOJ regarding suspected illegal privacy violations and surveillance.

72. Defendants directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of the above-described acts of falsely alleging mental illness, forced psychiatric exam and subsequent disciplinary action using fraud and perjury against Plaintiff in order to retaliate for his lawful exercise of free speech without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

73. Defendants' above-described conduct, and particularly the acts and omissions of the Defendants in ordaining, directing and carrying out an allegation of false mental illness, forced psychiatric evaluation and subsequent public disciplinary action using fraud and perjury against the Plaintiff, violated Plaintiff's rights to freedom of speech, assembly and association under the First Amendment to the United States Constitution.

74. Defendants are now engaging in and will continue to engage in the above described violations of Plaintiff's constitutional rights, and are thereby irreparably harming Plaintiff. Plaintiff has no adequate remedy at law for the Defendants' continuing unlawful conduct, and the Defendants will continue to violate Plaintiff's legal rights unless enjoined and restrained by this Court.

75. Plaintiff seeks that this Court declare that Defendants have violated his rights; enjoin the Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from violating the Plaintiff's rights under the First Amendment to the United States Constitution; and award such other and further equitable relief as is proper.

76. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT II

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

## THE FOURTEENTH AMENDMENTOF THE U. S. CONSTITUTION
## (AGAINST ALL DEFENDANTS)

77.    Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-76 above, as though fully set forth.

78.    Plaintiff, a healthy licensee, by not being shown reasonable cause for a compelled psychiatric exam and subsequent public discipline was not given the same fairness, and justice in this procedure as other licensees had been prior; and therefore was discriminated against and denied equal protection of the laws.

79.    Defendants never carried out their legal obligation to truly investigate the circumstances underlying Plaintiff's DOJ complaint letters and simply assumed that all of the allegations were untrue and indicative of an alleged false mental disorder.

80.    Defendants disregarded Plaintiff's fundamental right to due process by denying Plaintiff the right to discover key underlying documents relied upon during the disciplinary proceedings, in order to adequately defend himself.  These documents have been falsified, altered and concealed before the ALJs.  False statements have been put forth before the judges by Defendants regarding these fraudulent documents and other matters.

81.    Defendants directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of the above-described acts of making false statements and falsifying fraudulent documents in the disciplinary action against Plaintiff in order to retaliate for his lawful exercise of free speech without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.

82.    Defendants' above-described conduct, and particularly the acts and omissions of the Defendants in ordaining, directing and carrying out an allegation of false mental illness, forced psychiatric evaluation and subsequent public disciplinary action using fraud and perjury

1 against the Plaintiff, violated Plaintiff's rights to equal protection and due process under the
2 Fourteenth Amendment to the United States Constitution.

3     83.    Defendants are now engaging in and will continue to engage in the above-
4 described violations of Plaintiff's constitutional rights, and are thereby irreparably harming
5 Plaintiff. Plaintiff has no adequate remedy at law for the Defendants' continuing unlawful
6 conduct, and the Defendants will continue to violate Plaintiff's legal rights unless enjoined and
7 restrained by this Court.

8     84.    Plaintiff seeks that this Court declare that Defendants have violated his rights;
9 enjoin the Defendants, their agents, successors, and assigns, and all those in active concert and
10 participation with them from violating the Plaintiff's rights under the Fourteenth Amendment to
11 the United States Constitution; and award such other and further equitable relief as is proper

12     85.    Defendants' conduct was done intentionally, with deliberate indifference, or with
13 reckless disregard of, Plaintiff's constitutional rights.

14

15 ## COUNT III

16 ### CALIFORNIA CONSTITUTION, ART. I, §1 (PRIVACY)
### (AGAINST ALL DEFENDANTS)
17

18     86.    Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-85 above,
19 as though fully set forth.

20     87.    Defendants have engaged in public discipline, put forward on a public website and
21 published quarterly newsletter, and made freely available to the public, documents which falsely
22 allege Plaintiff with a mental illness, causing tremendous, irreversible damage to his personal
23 and professional reputation. Defendants' above-described conduct violated Plaintiff's right to
24 privacy under Article I, § 1 of the California Constitution.

25     88.    Defendants' conduct was done intentionally, with deliberate indifference, or with
26 reckless disregard of, Plaintiff's constitutional rights.

27

28 ## COUNT IV

**CALIFORNIA CONSTITUTION, ART. I, §2 (FREE SPEECH)**
**(AGAINST ALL DEFENDANTS)**

89. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-88 above, as though fully set forth.

90. Defendants' above-described conduct, and particularly the acts and omissions of the defendants in ordaining, directing and carrying out an allegation of false mental illness, forced psychiatric evaluation and subsequent public disciplinary action using fraud and perjury against the plaintiff, violated Plaintiff's rights to freely speak, write and publish under Article I, § 2 of the California Constitution.

91. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT V

**CALIFORNIA CONSTITUTION, ART. I, §3 (REDRESS OF GRIEVANCES)**
**(AGAINST ALL DEFENDANTS)**

92. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-91 above, as though fully set forth.

93. Defendants' above-described conduct, and particularly the acts and omissions of the Defendants in ordaining, directing and carrying out an allegation of false mental illness, forced psychiatric evaluation and subsequent public disciplinary action using fraud and perjury against the Plaintiff, violated Plaintiff's rights to petition the government for redress of grievances under Article I, § 3 of the California Constitution.

94. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT VI

**CALIFORNIA CONSTITUTION, ART. I, §7 (EQUAL PROTECTION)**
**(AGAINST ALL DEFENDANTS)**

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

95. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-94 above, as though fully set forth.

96. Defendants' above-described conduct, and particularly the acts and omissions of the Defendants in ordaining, directing and carrying out an allegation of false mental illness, forced psychiatric evaluation and subsequent public disciplinary action using fraud and perjury against the Plaintiff, showed Plaintiff was not given the same fairness, and justice in this procedure as other providers had been prior; and therefore was discriminated against and denied equal protection of the laws and due process under Article I, § 7 of the California Constitution.

97. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT VII

### BANE ACT, CALIFORNIA CIVIL CODE § 52.1
### (AGAINST ALL DEFENDANTS)

98. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-97 above, as though fully set forth.

99. Defendants' above-described conduct, and particularly the acts and omissions of the Defendants in ordaining, directing and carrying out an allegation of false mental illness, forced psychiatric evaluation and subsequent public disciplinary action using fraud and perjury against the Plaintiff constitute interference, by threats, intimidation, and coercion, with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States and California, in violation of Cal. Civil Code § 52.1.

100. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT VIII

### CALIFORNIA CIVIL CODE § 52.3
### (AGAINST DEFENDANTS STEWARD, MERCER, SIMON)

101. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-100 above, as though fully set forth.

102. Defendants' above-described conduct, and particularly the acts and omissions of the Defendants in ordaining, directing and carrying out an allegation of false mental illness, forced psychiatric evaluation and subsequent public disciplinary action using fraud and perjury against the Plaintiff constitute a pattern or practice of conduct by law enforcement officers that deprived Plaintiff of rights, privileges, or immunities secured or protected by the Constitution or laws of the United Sates or by the Constitution or laws of California, in violation of California Civil Code § 52.3.

103. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT IX

### THE PRIVACY ACT OF 1974, 5 U.S.C. § 552a
### (AGAINST ALL DEFENDANTS)

104. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-103above, as though fully set forth.

105. Defendants' above-described conduct, in secretly receiving and using as the sole basis for disciplinary action, Plaintiff's confidential, privileged U.S. DOJ complaint letters from Ken Gibson in 2005 and 2007 without Plaintiff's knowledge or permission, was in violation of 5 U.S.C. § 552a, The Privacy Act of 1974, which states "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."

106. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT X

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

## CALIFORNIA CIVIL CODE § 47(B)
## (AGAINST ALL DEFENDANTS)

107. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-106 above, as though fully set forth.

108. Defendants' above-described conduct, in utilizing Plaintiff's privileged complaint letters to the United States DOJ in 2005 and 2007 as the sole basis for disciplinary action was in violation of the Cal. Civil Code § 47(b), the "official proceeding" privilege, which has been interpreted broadly to protect communication to or from governmental officials, which may precede the initiation of formal proceedings. Numerous cases agree that the section 47(b) privilege applies to complaints to governmental agencies requesting that the agency investigate or remedy wrongdoing. *Passman v. Torkan* (1995) 34 Cal.App.4th 607, 616-619 [privilege applied to a letter written to the local district attorney's office intended to prompt a criminal prosecution.]

109. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT XI

## INFORMATION PRACTICE ACT OF 1977, CAL. CIVIL CODE § 1798
## (AGAINST DEFENDANT JOHNSTON)

110. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-109 above, as though fully set forth.

111. Defendant's refusal to allow Plaintiff to "inspect all the personal information in any record containing personal information" is in violation of Information Practice Act of 1977, Cal. Civil Code § 1798 et seq. Denying access to personal information, such as Panel A member votes against Plaintiff, is the equivalent of withholding personal information in Plaintiff's case.

112. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

1

2

## COUNT XII

3

**CALIFORNIA BUSINESS & PROFESSIONS CODE § 2335**
**(AGAINST DEFENDANTS CHANG, JOHNSTON)**

4

5

113. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-112

6

above, as though fully set forth.

7

114. Defendants' refusal to provide roll call records on May 12, 29 and July 24, 2008 is

8

in violation of Cal. Bus. & Prof. Code § 2335 (c)(2) and (5), which requires 2 votes against

9

Plaintiff to defer the final decision pending discussion, and a vote of the majority of the panel

10

present to non-adopt the ALJ's decision and increase the penalty. Without proof, a majority of

11

Panel A members present voted against Plaintiff on either May 29 or July 24, 2008, Defendants'

12

Decision lacks legal authority, and their discipline should be dismissed immediately, and

13

Plaintiff's license re-instated to full, unrestricted status, in good standing, as it existed prior to

14

the disciplinary proceedings.

15

115. Defendants' conduct was done intentionally, with deliberate indifference, or with

16

reckless disregard of, Plaintiff's constitutional rights.

17

18

## COUNT XIII

19

**CALIFORNIA CIVIL CODE § 45 (LIBEL)**
**(AGAINST ALL DEFENDANTS)**

20

21

116. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-115

22

above, as though fully set forth.

23

117. Defendants have engaged in public discipline, put forward on a public website and

24

published quarterly newsletter, and made freely available to the public, documents which falsely

25

allege Plaintiff with a mental illness, causing tremendous, irreversible damage to his personal

26

and professional reputation. This false allegation of mental illness exposes Plaintiff to hatred,

27

contempt, ridicule or obloquy, causing him great harm in his occupation and business affairs.

28

Defendants' above-described conduct constitutes libel under Cal. Civil Code § 45.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES

118. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT XIV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST ALL DEFENDANTS)

119. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-118 above, as though fully set forth.

120. Defendants' above-described conduct was extreme, unreasonable and outrageous. By engaging in such conduct, defendants intentionally ignored or recklessly disregarded the foreseeable risk that Plaintiff would suffer extreme emotional distress as a result of Defendants' conduct. As a proximate result of said conduct, Plaintiff suffered severe emotional distress, pain and suffering, fear, anxiety, embarrassment, discomfort and humiliation, all to their general damage in an amount to be proven, and incurred special damages in an amount to be proven.

121. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiff's constitutional rights.

## COUNT XV

### DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201, 2202

122. Plaintiff re-alleges and incorporates here the allegations in Paragraphs 1-121 above, as though fully set forth.

123. There exists an actual, present and justiciable controversy between Plaintiff and Defendants concerning their rights and duties with respect to Defendants' conduct described herein. Plaintiff contends that Defendants violated Plaintiff's rights under the constitutions and laws of the United States and the State of California. On information and belief, Defendants deny that their conduct violated Plaintiff's rights under the Constitutions and laws of the United States and the State of California. Plaintiff fears that he now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct

1   deprived Plaintiff of his rights under the Constitutions and laws of the United States and the
2   State of California.

3       124.   This controversy is ripe for judicial decision, and declaratory relief is necessary
4   and appropriate so that the parties may know the legal obligations that govern their present and
5   future conduct.

6

7                              **PRAYER FOR RELIEF**

8   WHEREFORE, Plaintiff seeks relief from this Court as follows:

9       1.     Order Defendants to immediately vacate their disciplinary decision and reinstate
10   Plaintiff's medical license to full, unrestricted status, in good standing, as it existed before the
11   proceedings;

12       2.     Issue a judicial declaration that Defendants' actions, as alleged in this Complaint,
13   violated the First and Fourteenth Amendments of the U. S. Constitution, Article I, §§ 1,2,3,7
14   California Constitution, Cal. Civil Code §§ 45, 47(b), 52.1, 52.3, Privacy Act of 1974, 5 U.S.C.
15   § 552a, Information Practice Act of 1977, Cal. Civil Code § 1798 et. seq.; Bus. & Prof. Code §
16   2335;

17       3.     Issue a preliminary and permanent injunction prohibiting Defendants from making
18   any future malicious allegations of false mental illness and public discipline as a means of
19   injury, intimidation and summary punishment for Plaintiff's exercise of free speech;

20       4.     Award Plaintiff compensatory and special damages in an amount at least equal to
21   $15 million, to be exactly determined at trial, and treble damages to the extent permitted by law;

22       5.     Award Plaintiff punitive damages against Defendants in an amount to be
23   determined at trial that would punish Defendants for their willful, wanton and reckless conduct
24   and that would effectively deter Defendants from engaging in similar conduct in the future;

25       6.     Award statutory damages and penalties pursuant to Cal. Civil Code § 52(b);
26       7.     Award Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42
27   U.S.C. § 1988, Cal. Civil Code §§ 52(b) and 52.1(h), and Cal. Code of Civil Procedure §1021.5;
28       8.     Award such other and further relief as the Court may deem just and proper.

1

2

## **DEMAND FOR JURY TRIAL**

3

In accordance with Fed. R. Civ. P. 38(b), and Northern District Local Rule 3-6(a),

4

Plaintiff hereby demands a jury trial for all issues triable by jury.

5

DATED: June 12, 2009

6

By: _____

7

WAYNE CHUNG, MD

8

Plaintiff

9

One Embarcadero Center, Suite 500
San Francisco, CA 94111

10

Tel: 415-350-0926
Fax: 707-864-6320

11

waynechung87@gmail.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES