UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE CHUNG, | No. C 09-02615 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| BARBARA JOHNSTON, JANE SIMON, LAWRENCE MERCER, CRAIG STEWART, CHARLES SEAMAN, MELVIN BROWN, VALERIE MOORE, and HEDY CHANG, | **Re: Defendants' Motion to Dismiss** |
| Defendants. / | |

Plaintiff Wayne Chung ("plaintiff") filed this action, pro se, against defendants Barbara Johnston ("Johnston"), Jane Simon ("Simon"), Lawrence Mercer ("Mercer"), Craig Stewart ("Stewart"), Charles Seaman ("Seaman"), Melvin Brown ("Brown"), Valerie Moore ("Moore") and Hedy Chang ("Chang") (collectively "defendants") pursuant to 42 U.S.C. section 1983 ("section 1983"). Defendants participated in a California medical board decision to place plaintiff, a medical doctor, on probation. Plaintiff alleges that defendants retaliated against him for the exercise of his First Amendment right to free speech. Defendants now move to dismiss the action under Federal Rule of Civil Procedure 12(b). Having considered the arguments and submissions of the parties, the court enters the following memorandum and order.

BACKGROUND

Plaintiff received his license to practice medicine in California from the Medical Board of California ("the Board") on November 14, 1997. Complaint ¶ 15. Plaintiff was certified in the area of internal medicine and practiced in this area until his emergency interim suspension on February 5, 2008. Id. ¶ 15. Plaintiff has worked in northern and southern California medical centers and also had a private practice for preventive health care in San Francisco. Id. ¶ 3. Defendants are various consultants, prosecutors, investigators and members of the Board.

In June 2005, plaintiff sent a letter to the Special Litigation Section of the Civil Rights Division of the United States Department of Justice ("DOJ"). Id. ¶¶ 5, 52. The letter included complaints that individuals, neighbors and police officers were using video and cell-phone surveillance to "manipulate the type of patient" who came to plaintiff's medical practice and that recent "potential patients do not appear to be genuine." See Docket No. 7 (Mercer Dec.), Exh. A ("Letter to DOJ"). Plaintiff wrote that the following incidents proved he was under surveillance by unknown perpetrators: icons on his desktop were moved from their original positions; he had received several prank calls; police officers were at street corners he passed on his way to work; his neighbors were entering and exiting his building at the same time as plaintiff; and telemarketers had called his cell phone and work line simultaneously. Id. In his letter, plaintiff asked for an investigation of "suspected privacy violations and illegal surveillance conducted against him by either rogue hackers or law enforcement agents." Id. An employee of the DOJ, Ken Gibson, contacted the Board regarding plaintiff's letter in 2005, concerned that plaintiff suffered from a mental illness.[1] Id. ¶ 5. This notification began the Board's investigation into plaintiff's mental health. Id.

After receiving the letter, Stewart, a Board investigator, gave the letter to Seaman and Brown, medical consultants for the Board, for evaluation. Id. ¶ 33-35. Both Seaman and Brown concluded that plaintiff suffered from a mental disorder. Id. ¶¶ 27-32. After conducting a psychiatric evaluation of plaintiff, Seaman opined that plaintiff was unsafe to practice medicine. Id. ¶¶ 27-29. Thereafter a petition for interim order of suspension ("ISO") was submitted. Mercer Dec.,

2

Exh. D (Petition for Interim Order of Suspension). The ISO was granted on February 5, 2008, based upon the administrative law judge's finding that plaintiff "suffers from a mental illness that renders him incapable of practicing medicine with safety to the public." Id. at 4:3.

On August 12, 2008 the Board issued its final decision on plaintiff's ability to practice medicine. Mercer Dec., Exh. I (Decision After Nonadoption). The Board concluded that plaintiff's judgment was impaired by delusional beliefs. Id. at 16. It vacated the emergency suspension and conditioned, rather than revoked, plaintiff's license to practice medicine. Id. at 17. The Board found that, due to plaintiff's limited insight into his mental illness, conditions were necessary on his medical practice. Id. The Board mandated psychotherapy and psychiatric evaluation as well as periodic monitoring of plaintiff's practice by another physician. Id. at 19-24. Plaintiff maintains that he has never suffered, and does not currently suffer, from a mental illness.

On November 18, 2008, plaintiff appeared through counsel before the Superior Court of California, petitioning for an administrative writ of mandate ordering the Board to vacate its decision. See Mercer Dec., Exh. J (Superior Court Decision). After briefing and oral argument, the court held that the Board had properly supported its conclusion with clear and convincing evidence. Id. at 1. After the petition was denied, plaintiff appealed to the California Court of Appeal, which summarily affirmed the Superior Court's decision. Mercer Dec., Exh. K. Plaintiff further appealed to the Supreme Court of California, which denied plaintiff's petition for review. Mercer Dec., Exh. L. On June 3, 2009, plaintiff filed a claim with the California Victim Compensation and Government Claims Board requesting a review and investigation of all Board personnel involved in the decision to condition his medical license. Mercer Dec., Exh. M. This request is currently pending. Meanwhile, plaintiff filed the instant action in this court on June 12, 2009.

Plaintiff argues in this court that the actions of the defendants: (1) violated his First Amendment rights by engaging in an investigation in order to retaliate against plaintiff for his exercise of free speech; (2) violated his Fourteenth Amendment and state constitutional rights by conducting an investigation and conditioning his medical practice license; (3) violated his state constitutional rights by engaging in public discipline through a public website and newsletter; (4)

3

violated his state constitutional rights by prohibiting him to freely speak and petition the government for redress of grievances; and (5) committed the tort of intentional infliction of emotional distress.

Specifically, plaintiff alleges that each defendant played a part in creating the appearance that he suffered from a mental illness so that the Board could silence him regarding his letters to the DOJ.[2] Plaintiff maintains that Simon and Mercer, both administrative law prosecutors in the State Attorney General's Office, conducted an unjustified prosecution of plaintiff. Id. ¶¶ 41-46. Plaintiff argues that his prosecution was not premised on his ability to practice medicine safely but was part of a conspiracy by the defendants to falsely label plaintiff as mentally ill in order to silence him. Id. ¶¶ 41, 44. Plaintiff alleges that Moore, a Board analyst, failed to provide him with a copy of the petition for the order compelling a psychiatric exam. Id. ¶ 38. Plaintiff asserts that Chang, a Board panel member, intentionally discounted exculpatory evidence when she signed the order conditioning plaintiff's medical license. Id. ¶ 48. Plaintiff alleges that Johnston, Executive Director of the Board, intentionally provided incomplete records and participated in the execution of the petition to compel a psychiatric exam. Id. ¶¶ 16, 52-53. Plaintiff seeks the following relief: (1) reinstatement of plaintiff's medical license to full, unrestricted status, in good standing, as it existed before the proceedings; (2) a judicial declaration that defendants' actions violated plaintiff's constitutional rights; (3) a permanent injunction prohibiting defendants from making any future false allegations of mental illness against the plaintiff; and (4) damages.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). When faced with a motion to dismiss, courts typically "look only at the face of the complaint." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). However, the doctrine of incorporation by reference allows a district court to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." In re Silicon Graphics Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (quoting Branch v.

4

Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)).  The court may disregard allegations contradicted by facts established by reference to documents attached as exhibits to the complaint, or on which the complaint necessarily relies.  Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); see also Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987); Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).  If plaintiff fails to attach to the complaint documents on which the complaint is based, defendant may attach to a Rule 12(b) motion the documents referred to in the complaint to show that they do not support the plaintiff's claim.  In re Stac Electronics Sec. Litig., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (court considered the entire text of a prospectus not attached to the complaint, including portions not mentioned in the complaint).

      A court will grant a motion to dismiss if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  A plaintiff's complaint may be dismissed either for failing to articulate a cognizable legal theory or for not alleging sufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  A court must begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1950 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.  The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

DISCUSSION

Defendants argue that plaintiff is precluded from litigating his federal constitutional claims because all defendants have immunity. Defendants also contend the complaint fails to state any claim upon which relief can be granted.[3]

I. Immunity

  A. Absolute Immunity

Although the text of section 1983 does not include a defense of immunity, courts have extended the protections of absolute immunity to qualifying state officials sued under that section. Miller v. Gammie, 335 F.3d 889, 895-96 (9th Cir. 2003) ("[T]he Supreme Court has recognized that when Congress enacted section 1983, it was aware of the common-law tradition that extended absolute immunity to individuals performing functions necessary to the judicial process.") (citations omitted). Absolute immunity is also extended not only to prosecutors and judges but also, under certain circumstances, to agency representatives performing functions analogous to those of a prosecutor or a judge. See id., 335 F.3d at 898. Such immunity assures the independent functioning of executive officials acting in a quasi-judicial capacity, thereby ensuring that they can exercise their adjudicative discretion without fear of intimidation or harassment. Butz v. Economou, 438 U.S. 478, 515-17 (1978). Whether the protections of absolute immunity are accorded to an agency whose functions are sufficiently similar to the judicial process is based on a "functional approach." Cleavinger v. Saxner, 474 U.S. 193, 201 (1985). It must be considered whether the actions taken by the official are "functionally comparable" to that of a judge or a prosecutor. Butz, 438 U.S. at 513. The Ninth Circuit has held that a medical board, and its members, professional staff and counsel, function in a sufficiently judicial and prosecutorial capacity to entitle them to absolute immunity. Olson v. Idaho State Bd. of Medicine, 363 F.3d 916 (9th Cir. 2004). This court finds that the Board is a quasi-judicial tribunal. Its members and counsel have absolute immunity which extends to both their official and individual capacities.

Absolute quasi-judicial immunity applies to defendant Chang in her capacity as a Board member. "Persons performing adjudicatory functions in administrative agencies enjoy absolute

6

1  immunity from liability for damages for their judicial acts." Butz, 438 U.S. at 512.  "The decision to
2  initiate administrative proceedings against an individual or corporation is very much like the
3  prosecutor's decision to initiate or move forward with a criminal prosecution. . . . An individual
4  targeted by an administrative proceeding will react angrily and may seek vengeance in the courts."
5  Id. at 515.  Public policy requires that those involved in making administrative determinations be
6  held immune from suit for such determinations.  The public interest in the effective execution of
7  administrative policy is equally compelling in the field of state medical licensing.  Horwitz v. Bd. of
8  Med. Examiners of State of Colo., 822 F.2d 1508, 1515 (10th Cir. 1987), cert. denied, 484 U.S. 964
9  (1987); see Watts v. Burkhart, 978 F.2d 269, 278 (6th Cir. 1992) (holding that physician's suit
10 against members of the State Medical Licensing Board sued individually for damages in connection
11 with Board's suspension of his license are protected by quasi-judicial immunity); Wang v. New
12 Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 701 (1st Cir. 1995) (holding medical board
13 members were absolutely immune from suit in their individual capacities for damages for claims
14 arising out of their "quasi-judicial and/or prosecutorial functions").  Plaintiff argues that Chang did
15 not give proper weight in her decision to certain evidence and erroneously signed the order
16 suspending plaintiff's medical license.  Although plaintiff may believe Chang's actions to be wrong,
17 displeasing or improperly influenced, her actions as a member of the Board fall under absolute
18 immunity.  As such, plaintiff cannot use federal proceedings as a collateral attack on Chang's
19 decision.

20      Absolute prosecutorial immunity also applies to the conduct of Simon and Mercer because
21 they are being sued for actions taken while serving as the Board prosecutors. Plaintiff is attempting
22 to hold both of these defendants civilly liable for prosecutorial misconduct, and such claims are
23 clearly barred.  See Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (holding state prosecuting
24 attorney absolutely immune from section 1983 action premised on unlawful prosecution). Plaintiff
25 alleges that both Simon and Mercer made false statements to the judges of the ALJ and Superior
26 Court during proceedings.  However, defendants' actions were "intimately associated with the
27 judicial phase" of the process: statements were made during judicial or tribunal proceedings and

pertained to the presentation of the prosecution's case. Such activities are central to the execution of a prosecutor's core judicially-related duties, and they are precisely the kind of activities absolute prosecutorial immunity is meant to shield. See, e.g., Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 782 (9th Cir. 2001); Broam v. Bogan, 320 F.3d 1023, 1029 (9th Cir. 2003). It follows that Simon and Mercer are absolutely immune from suit in this instance. See Broam, 320 F.3d at 1029 ("If the action was part of the judicial process, the prosecutor is entitled to the protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights.") (citing Scheuer v. Rhodes, 416 U.S. 232, 242 (1974)).

### B. Qualified Immunity

Qualified immunity shields a public official from individual liability for civil damages under section 1983 so long as his conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, ___ U.S. ___, ___, 129 S.Ct. 808, 815 (2009) (citation and internal quotation marks omitted). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court articulated an inquiry for determining whether qualified immunity is appropriate. For an official to benefit from qualified immunity, two requirements must be met. First, the court must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. Id. at 201. Second, the court must consider whether any constitutional right that was violated was so clearly established that a reasonable official would have understood that what he was doing violated that right. Id. at 202. The second inquiry is particularized, as it occurs

8

in the specific context of the situation confronted by the official. Id.; see also Rudebusch v. Hughes, 313 F.3d 506, 514 (9th Cir. 2002). The Saucier inquiry articulated the first question as a threshold question; however, the Court recently held that lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818.

Plaintiff alleges that Johnston, in her capacity as Executive Director of the Board, participated in the execution of a petition to compel a psychiatric examination and provided plaintiff with incomplete records. Taken in the light most favorable to the plaintiff, the facts alleged do not show that Johnston's conduct violated a constitutional right. Signing petitions and sending documents do not violate a constitutional right without more facts. A "general conclusory allegation" is deemed insufficient to meet plaintiff's burden of establishing a constitutional violation. See Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir. 1985). As such, Johnson is subject to qualified immunity.

The allegation against Moore, a Board analyst, is that she failed to provide plaintiff with a copy of the October 23, 2007, petition for an order compelling psychiatric exam. Plaintiff concludes that because he did not receive a copy from Moore, she participated in falsifying documents. The mailing of documents is a function inherent to the prosecution of the administrative law action. The allegations do not support a plausible inference that any constitutional right was violated. As such, Moore is subject to qualified immunity.

In his role as consultant to the Board, Brown recommended plaintiff for psychiatric examination. Although plaintiff argues that Brown's conclusion was unsubstantiated, plaintiff fails to cite to a constitutional violation which would take Brown's actions outside the scope of qualified immunity. Brown, after reviewing all evidence in plaintiff's file, and acting within his capacity as a medical consultant, recommended that plaintiff should undergo psychiatric evaluation to substantiate whether or not plaintiff suffered from a medical condition. No action was taken at this juncture regarding plaintiff's medical licence. Furthermore, as a witness, Brown is absolutely immune from

1 civil liability based on his trial testimony in judicial proceedings. See Briscoe v. LaHue, 460 U.S.
2 325, 345 (1983).

3 Plaintiff argues that Seaman's medical findings and testimony are unsubstantiated.
4 Essentially, plaintiff disagrees with Seaman's professional opinion regarding plaintiff's fitness to
5 practice medicine. Seaman's conduct must be divided into two components: (1) testimonial and (2)
6 non-testimonial (creation of the medical report). As noted, witnesses are absolutely immune from
7 civil liability based on their trial testimony in judicial proceedings. A witness is entitled to
8 testimonial immunity "no matter how egregious or perjurious that testimony was alleged to have
9 been." Spurlock v. Satterfield, 167 F.3d 995, 1001 (6th Cir. 1999). Moreover, "the mere fact that
10 plaintiff may allege a conspiracy to render false testimony, as opposed to simply alleging that one
11 person testified falsely at trial, does not waive absolute testimonial immunity." Id. Accordingly,
12 Seaman is entitled to absolute immunity for the testimony he offered at trial. That protection,
13 however, does not extend to Seaman's non-testimonial conduct "despite any connection these acts
14 might have to later testimony." Gregory v. City of Louisville, 444 F.3d 725, 739 (6th Cir. 2006).
15 Yet Seaman's preparation of the medical report falls within qualified immunity, for the same reasons
16 as do the activities of the defendants already discussed. Plaintiff does not allege facts supporting an
17 inference of a constitutional violation.

18 Plaintiff argues that Stewart erroneously forwarded plaintiff's DOJ letter to Brown and
19 Seaman for the purpose of furthering a conspiracy in labeling plaintiff with a mental condition such
20 that plaintiff would recant his letter sent to the DOJ. A "general conclusory allegation" is deemed
21 insufficient to meet plaintiff's burden of establishing a constitutional violation. See Backlund, 778
22 F.2d at 1389. Even if plaintiff could establish that giving the letter to medical doctors for evaluation
23 violated his constitutional rights, he fails to allege facts supporting an inference that Stewart was
24 unreasonable in his belief that his conduct was lawful. Stewart's actions were in line with those of
25 an investigating official of a medical licensing board who receives information suggesting that a
26 licensed member is not fit to practice medicine. His duties include forwarding credible information

10

for further investigation. In summary, all defendants have immunity from plaintiff's federal constitutional claims.

## II.     Failure to State a Claim

As to those causes of action advanced by plaintiff that are not barred by absolute and qualified immunity, plaintiff has failed to state a claim under Federal Rule of Civil Procedure 8. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to survive a motion to dismiss. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). A court will grant a motion to dismiss if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The complaint alleges that each defendant played a part in a conspiracy to subject plaintiff to an investigation in order to undermine plaintiff's complaints to the DOJ for alleged unlawful physical and electronic surveillance. The specific allegations, however, represent little more than assertions that each defendant did his or her job. Stewart, an investigator, investigated plaintiff; Simon and Mercer, Deputies Attorney General, prosecuted him; Seaman and Brown, Board medical consultants and witnesses, testified about him. In addition, plaintiff alleges that Johnson, as the Executive Director of the Board, signed a petition; Moore, an analyst with the Board, failed to provide plaintiff with a copy of a petition; and Chang, a member of the Board, did not give sufficient weight to the ALJ's remarks when she rendered her decision. Plaintiff's allegations amount to nothing more than displeasure with the Board's decision. To the extent that the complaint alleges a conspiracy to persecute plaintiff, it is implausible, to say the least. See Twombly, 550 U.S. at 570. Indeed, the fact that plaintiff believes defendants engaged in such a vast and unexplained conspiracy lends support to the Board's conclusion that plaintiff suffers from a delusional disorder.

## III.    Leave to Amend

The complaint will be dismissed without leave to amend. Futility alone can justify the denial of a motion for leave to amend. Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) (citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)). For the reasons discussed above, amendment would be futile in this case.

11

## CONCLUSION

For the reasons foregoing reasons, defendants' motion to dismiss is GRANTED. Plaintiff's claims are DISMISSED with prejudice. Judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated: October 19, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Plaintiff later sent the Civil Rights Division a "daily log" that listed various incidents during the July 6-12, 2005, time period, which were similar in character to the types of occurrences listed in plaintiff's June 2005 letter. See Mercer Dec., Exh. A.

2. Plaintiff does not contend that the Board conditioned his license because he has been involved in any controversial activity or taken an unpopular stand on some issue. The free speech which he asserts the conspiracy sought to suppress comprises simply the reports he made to the DOJ, which the Board found to be evidence of plaintiff's delusional beliefs. Plaintiff has not presented facts or articulated any theory to explain why the California Medical Board would have an interest in suppressing plaintiff's letters to the DOJ about alleged surveillance by unknown perpetrators.

3. Defendants also argue that plaintiff's claim is an impermissible appeal of a state court judgment under the rule set forth in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and elaborated in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The court does not reach this question. Nor is it necessary for the court to reach defendants' argument that they are also granted immunity as a matter of California statutory law.